IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

FILED
IN OPEN COURT

JAN 1 4 2026

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA

v.                                                     Criminal No. 1:25-CR-331

CESAR ADAN ROJO-ORTIZ,

*Defendant.*

## STATEMENT OF FACTS

The United States and the defendant, Cesar Adan Rojo Ortiz, (hereinafter, "the defendant"), agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.      Beginning at least in and around September 2024 and continuing thereafter up to and including August of 2025, the exact dates being unknown, in Dunn Loring, Virginia, within the Eastern District of Virginia, and elsewhere, the defendant, Cesar Adan Rojo Ortiz, joined a conspiracy that began in or around April of 2019, in which he did unlawfully, knowingly and intentionally combine, conspire, confederate, and agree with Venancio Martinez Antero and others, both known and unknown, to unlawfully, knowingly, and intentionally, distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

2.      Further, on or about October 28, 2024, the exact date being unknown, the defendant did knowingly and intentionally distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine into the Eastern District of Virginia.

3.      During the course of and in furtherance of the conspiracy, the defendant personally distributed, or it was reasonably foreseeable to him that his coconspirators distributed, at least 15 kilograms of methamphetamine.

4.      The defendant was part of a conspiracy involving the manufacture and distribution of counterfeit Adderall pills. However, instead of their pharmaceutical makeup, the coconspirators' pills contained methamphetamine.

## I.      *The Coconspirators' Distribution through Darknet Markets*

5.      It was part of the conspiracy that, beginning at least as early as April 2019, the defendant's coconspirators utilized vendor accounts on various darknet marketplaces (hereinafter the coconspirators "darknet vendor accounts"), as well as encrypted messaging applications, to sell counterfeit Adderall pills containing methamphetamine. Coconspirators operated these darknet vendor accounts on several darknet marketplaces, including Empire, Cryptonia, White House, Darkmarket, Wall Street, and Versus marketplace. On these markets and encrypted applications, the coconspirators used multiple aliases, including REALXANTACLAUS, UNDERGROUNDGOD, and SIRSMACKS.

6.      In order to operate on these markets, the defendant's coconspirators created vendor profile pages, which listed items for sale, published descriptions of their products and operation to attract customers, and published customer reviews of their products. The defendant's coconspirators advertised counterfeit Adderall pills in quantities between 400 and 3,000 pills per sale, and required a minimum purchase of 400 pills, at times specifying to buyers "only bulk buyers

2

no more small fish." Market data seized from just one darknet market that the conspiracy operated on for a 14-month period revealed that between May 2019 and August 2020, the coconspirators processed over 1,300 orders over the market, for a total of over 405,000 counterfeit Adderall pills.

7.    The defendant's coconspirators typically received payment for controlled substances in the form of cryptocurrency. Cryptocurrency tracing analysis of one particular cryptocurrency wallet linked to the receipt of proceeds by coconspirators identified over 1,600 cryptocurrency transactions from March 2022 to July 2025 totaling a value of at least $1.7 million in U.S. dollars.

8.    The defendant's coconspirators advertised their status as a bulk seller of methamphetamine across various darknet pages, in particular recommending the distribution of counterfeit pills at college campuses. For example, on Empire Market, the defendants' coconspirators advertised to redistributors "these are pressed and smack in the streets and in the universities," adding "college just started its time to easily pay off your rent and live the life you deserve." Reviews submitted by the coconspirators' customers on their darknet vendor accounts confirmed distribution targeted at youth. For example, one redistributor stated, "good deal, was able to even sell to kiddos in bulk."

9.    The coconspirators' product listings on the darknet did not disclose the methamphetamine contained in the pills, instead calling the pills "Adderall" and "strong pressed adderallz." The defendant's coconspirators further advertised how users would be unable to distinguish between their counterfeit Adderall pills and those that are legitimately pharmaceutically manufactured. For example, on one darknet forum, the coconspirators wrote "mine is dosed with equally amount of meth so your customers cant tell the difference if its amphetamine or meth . . . in turn you make a shit ton of money." Reviews submitted by the

3

coconspirators' customers on their darknet vendor accounts confirmed the same. For example, one buyer wrote "same effect as ones from the pharmacy and look identical." Another wrote "the majority can deff pass as pharmacy grade Adderall pills." Other buyers confirmed that they did not know there was methamphetamine in the pills purchased. For example, one buyer wrote "in my naivety I didn't realize these were pressed meth not Adderall." Another warned other potential buyers, "Not Adderall. Tested them myself and it came out as methamphetamine. Just a heads up to all."

**II.    *The Defendant and his Coconspirators' Packing and Shipment of Drug Orders***

10.    During the course of the conspiracy, once orders were placed with the defendant's coconspirators, the customer names, shipping addresses, and drug quantities were sent to members of the conspiracy, who packaged drugs for shipment to redistributors nationwide—including into the Eastern District of Virginia—using methods designed to evade law enforcement detection. These included the use of fictitious business names on packages, multiple layers of wrapping to conceal controlled substances within, as well as mylar bags to conceal the odor of controlled substances. The coconspirators further attempted to avoid law enforcement detection through convoluted means of depositing packages at U.S. Post Office boxes, including through the use of multiple vehicles bearing temporary license plates, wearing gloves while depositing mail, and utilizing multiple individuals to deposit packages for shipment in the U.S. mail.

11.    In May 2025, surveillance footage obtained by law enforcement showed the defendant purchasing manila mailers of the kind used to ship controlled substances in furtherance of the conspiracy. Historical records showed the defendant using the same payment method to purchase similar manila mailers on prior occasions.

4

12.     In the course of the investigation, law enforcement laboratory analysis identified the defendant's fingerprints on packing materials for seven separate shipments of controlled substances associated with the conspiracy. The defendant's fingerprints were identified on various components of the packaging, including on the mailer, tape, postage label, and on a translucent vacuum-sealed bag containing counterfeit Adderall pills. The defendant packaged these materials between September 2024 and May 2025. Six[1] of the packages bearing the defendant's fingerprint together contained over 2,000 counterfeit Adderall pills, consisting of over 750 grams of a mixture and substance containing methamphetamine and at least 33 grams of pure methamphetamine.

### III.    *Manufacture of Counterfeit Pills by Coconspirators*

13.     It was part of the conspiracy that members of the conspiracy manufactured counterfeit pills for distribution by the defendant and others. The counterfeit Adderall were round, orange pills, debossed with "A D" on one side and "3 | 0" on the other. These markings were consistent with a pharmaceutical form of Adderall. The pills did not, however, contain the active ingredients of the pharmaceutically manufactured drug and instead contained methamphetamine. The coconspirators nevertheless advertised these counterfeit pills as Adderall.

14.     Law enforcement further identified shipments of binding materials to the defendant's coconspirators. In total, law enforcement identified at least 35 shipments totaling approximately 895 kilograms of orange binding material shipped to members of the conspiracy from July of 2020 to January of 2025.[2] These shipments included approximately 23 shipments to

---

[1] The government is awaiting lab results for the seventh order referenced in this paragraph. Therefore, this amount does not include the quantity from the seventh order.

[2] Before August 2020, it appeared the manufacture and shipment of controlled substances from the conspiracy originated predominantly out of another state.

the residence of an uncharged coconspirator, UCC-1, who held a familial relationship with Venancio Martinez Antero.

15.    The average weight per pill of the counterfeit Adderall seized by law enforcement in its investigation was approximately 0.39 grams per pill. Each 25-kilogram shipment of binding material was therefore capable of producing at least 64,100 pills. The 895 kilograms of binding materials identified as being received by coconspirators was capable of producing over 2.2 million pills.

16.    On the date of the defendant's arrest, law enforcement searched a garage that was controlled by the defendant, which was on the premises of a larger auto body shop. The defendant had rented the garage for approximately three years and regularly visited the garage. The defendant controlled access to the garage, including by having affixed a lock and signs reading "authorized personnel only" on the door, and by placing a camera above the exterior of the door. On at least one occasion, the defendant directed codefendant Venancio Martinez Antero to pick up a drug parcel from him at this garage and to deposit it into the U.S. mail in exchange for payment.

17.    During the search of the garage, among other items, law enforcement seized shipping labels for orders to known drug customers of the conspiracy, manila mailers of the kind previously used by the defendant to ship controlled substances, $2,900 in U.S. currency, a blender containing orange powder, an opened 25-kilogram bag of orange binding material of the same brand previously identified by law enforcement as used by the conspiracy, two large plastic containers containing orange powder, and an industrial pill press containing orange powder. The industrial pill press was fitted with attachments enabling it to manufacture counterfeit Adderall pills debossed with "A D" on one side and "3 | 0" on the other.  Laboratory testing confirmed the

presence of at least 27 grams of a mixture and substance containing methamphetamine within the pill press.

18.     Also inside the defendant's garage, law enforcement seized multiple electronic devices. Within a computer in the garage, law enforcement found communications between coconspirators via an encrypted messaging application. Amongst other information, the communications included the transmission of quantities and addresses for drug shipments to be fulfilled by the conconspirators. Drug quantities located in communications spanning September 2024 through August 2025 totaled approximately 96,125 pills, or 37.4 kilograms[3] of a mixture and substance containing a detectable amount of methamphetamine.   Also on the device, law enforcement identified hundreds of PDFs containing postage labels for controlled substance shipments dating back to at least October 2020.

### IV.     *Law Enforcement Seizures*

19.     As set forth below, through controlled purchases and postal seizures, law enforcement seized over 5 kilograms of counterfeit Adderall pills (approximately 13,692 pills) associated with the conspiracy.

20.     Between September 2019 and July 2025, law enforcement made approximately forty-seven (47) controlled purchases from the coconspirators' darknet vendor accounts and accounts on encrypted messaging applications. Law enforcement typically ordered between 200 and 3,000 counterfeit Adderall pills at a time. The pills were shipped to covert mailboxes within the Eastern District of Virginia and elsewhere.

21.     For example, on or about October 18, 2024, a law enforcement officer acting in an undercover capacity placed an order for 1,000 counterfeit Adderall pills from an unknown

---

[3] Based on an average weight of 0.39 grams per pill.

coconspirator on an encrypted messaging application. The undercover officer sent approximately $1,700 in cryptocurrency and provided the coconspirator with a name and the address of a mailbox located in the Eastern District of Virginia for shipment of the order. Law enforcement subsequently retrieved three packages from the provided undercover mailbox in the Eastern District of Virginia, which were shipped between October 19 and October 28, 2024, to the name and address provided by the undercover officer. Each package bore fictitious business addresses in Dallas, Texas as the sender addresses. Within the envelope for each parcel was a silver mylar bag which had been taped closed. Inside of the bag was brown construction paper, which had been wrapped and taped around a heat- and vacuum-sealed bag containing numerous orange round tablets that were debossed with "AD" on one side and "30" on the other. The pills from each package were sent to the DEA Mid-Atlantic laboratory, which revealed that the packages contained 430, 541, and 537 pills,[4] respectively, for a total of approximately 646 grams of a mixture and substance containing a detectable amount of methamphetamine. The packaging materials for these packages were sent to an FBI laboratory for fingerprint analysis. Two fingerprints belonging to the defendant were identified on an envelope for one of the October 2024 shipments. The envelope bearing the defendant's fingerprint had been mailed on or about October 28, 2024, and was found to contain approximately 537 counterfeit Adderall pills containing methamphetamine.

22.    This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

---

[4] Notably, the conspirators provided approximately 508 more pills than had been ordered by the undercover, likely either by mistake or to reward the buyer for an increase in their typical purchase from 200 to 1,000 pills.

23.    The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

<div style="margin-left:40%">

Respectfully submitted,

LINDSEY HALLIGAN
UNITED STATES ATTORNEY AND SPECIAL
ATTORNEY

</div>

Date:    January 12, 2026

<div style="margin-left:40%">

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

By: _____
     Lauren E. Hahn
     Special Assistant United States Attorney (LT)
     Heather C. Call
     Assistant United States Attorney

</div>

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Cesar Adan Rojo Ortiz, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Cesar Adan Rojo Ortiz

I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Brooke Rupert
Counsel for Cesar Adan Rojo Ortiz